UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PAINTERS AND ALLIED TRADES DISTRICT COUNCIL NO. 35 | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) C.A. No.: 05-10547-PBS |
| NORTH RIVER GLASS, CO., INC., | ) ) |
| and its successor | ) ) |
| NORTH RIVER GLASS & ALUMINUM, L.L.C., Defendants. | ) ) ) ) |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT OR IN THE ALTERNATIVE SUMMARY JUDGMENT

### I.    Introduction

This is an action to enforce a labor arbitration award pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. §185. Plaintiff Painters and Allied Trades District Council No. 35 and Defendant North River Glass Co., Inc., and its successor, North River Glass & Aluminum, L.L.C.. (collectively, "North River Glass"), are parties to a collective bargaining agreement that provides for final and binding arbitration of disputes under the agreement before the Painting, Finishing & Glazing D.C. No. 35 Joint Trade Board ("Joint Trade Board").

On February 7, 2005, the Joint Trade Board issued an arbitration award in which it found that North River Glass violated the agreement by failing to make required fringe benefit contributions, and awarded Painters and Allied Trades District Council No. 35 the

amount of $14,398.54. North River Glass did not file a motion to vacate the arbitration award within the thirty-day statutory period. As there are no genuine issues of material fact in dispute, summary judgment in favor of the Plaintiff is appropriate.

II.     Statement of Undisputed Material Facts

Painters & Allied Trades District Council No. 35 (hereinafter "District Council") filed a Complaint in this matter on March 23, 2005 against Defendant North River Glass. (Affidavit of Jonathan Conti, ¶, ). Defendant answered the Complaint on April 20, 2005, and a Scheduling Conference was held on September 21, 2005. (Conti Aff., ¶ ). At the Scheduling Conference, Defendant was ordered to retain counsel to represent the corporation. Upon information and belief, as of October 4, 2005, Defendant has not retained an attorney. (Conti Aff., ¶ ).

Plaintiff is the authorized collective bargaining representative for painters and allied trades employed in Massachusetts, Vermont, Maine, and New Hampshire. (Affidavit of Ralph Harriman ¶ 3). The District Council and the Painters & Finishing Employers Association of New England, Inc. ("Contractors Association"), and the Glass Employers Association of New England, Inc., are parties to a collective bargaining agreement (hereinafter "the agreement") with effective dates of July 1, 2002 to June 30, 2006. (Harriman Aff. ¶ 4; Exh. A). Defendant North River Glass Co., Inc., was bound to the agreement by virtue of its having signed a Memorandum of Understanding for Non-Association Independent Contractors on November 2, 1998. (Harriman Aff. ¶ 5; Exh. B).

Article XIX of the collective bargaining agreement provides for a grievance and arbitration provision for handling disputes that arise under the agreement. (Harriman Aff. ¶ 6, Exh. A). Pursuant to Article XIX, Section 1, the Joint Trade Board is made up of

2

representatives from both the District Council and the Contractors Association, and is authorized, pursuant to Article XIX, Section 5 of the agreement, to hear and adjudicate "all questions of interpretation of this agreement and all grievances and complaints against members of either party to this Agreement, or independent signatory Employer for alleged violations of the same." (Harriman Aff. ¶ 6; Exh. A). Article XIX, Section 11 of the agreement mandates that the Joint Trade Board's decisions are binding on the parties, including any independent signatory, unless appealed in accordance with Article XX of the agreement. (Harriman Aff. ¶¶ 6, 7; Exh. A).

On October 14, 2004, the Joint Trade Board informed Defendant that due to its delinquency history, it would now be considered a "probationary contractor" and would need to post either a security deposit or a performance bond pursuant to Article IX, Section 1. (Harriman Aff., ¶¶ 8, 9; Affidavit of Heather Palmacci, ¶ 3). When Defendant failed to comply with Article IX, Section 1, Painters and Allied Trades District Council No. 35 Trust Funds Administrative Committee voted to bring charges against Defendant on January 10, 2005. (Harriman Aff., ¶ 9; Exh. D; Palmacci Aff., ¶ 4). Article IX, Section 1 of the agreement is titled "Probationary Contractor/Employer Obligations," and provides that "any Employer who becomes delinquent in its contributions to the Funds will be considered a Probationary Employer for a period of twenty-four months, and must provide either a security deposit or a performance bond by an A-rated carrier as approved by the Commonwealth of Massachusetts.

On January 14, 2005, the Joint Trade Board notified North River Glass via certified mail that Painters and Allied Trades District Council No. 35 Trust Funds Administrative Committee had also brought charges against Defendant for the alleged

3

violation of Article IX, Section 3. (Harriman Aff., ¶ 10; Exh. E; Palmacci Aff., ¶ 5)

That provision states, in relevant part:

Contributions shall be considered delinquent if not received by the 26th day of the month following the month the work was performed or for weekly submittals, the Wednesday of the week following the week in which the work is performed. Interest charged at the rate of 1 1/2 % per month or prorated for weekly submittals will be assessed for any delinquent contributions which are not paid in violation of this Agreement. (Harriman Aff., ¶ 10; Exh. A).

The Joint Trade Board informed North River Glass by certified and regular mail in its January 10 and January 14, 2005 letters that it was being summoned to have a representative appear on its behalf before the New England Painting, Finishing & Glazing D.C. No. 35 Joint Trade Board at

11:10 a.m. on Tuesday, February 1, 2005, at the offices of Painters and Allied Trades District Council No. 35, 25 Colgate Road, Roslindale, Massachusetts, to resolve the two matters. Defendant refused to sign for the letters. (Harriman Aff., ¶ 11; Exhs. C and D; Palmacci Aff., ¶ 6).

On February 1, 2005, a hearing was held before the Joint Trade Board. Despite proper notice, no one appeared on behalf of the Company. (Harriman Aff., ¶ 12; Palmacci Aff., ¶ 7). Heather Palmacci of the Painters and Allied Trades District Council No. 35 Trust Funds presented evidence in support of the charge, explaining that Defendant had failed to pay the required fringe benefit contributions for October, November, and December 2004, and that Defendant was in arrears for a total of $11,832.12. (Harriman Aff., ¶ 12; Palmacci Aff., ¶ 7).

Based upon the evidence presented, the Joint Trade Board held that Defendant had breached Article IX, Sections 1 and 3 of the agreement by failing to make the required contributions for October, November, and December 2004 in the amount of

4

$11,832.12, and had failed to obtain a security deposit or a fringe benefit bond, in violation of Article IX, Section 1. (Harriman Aff., ¶ 13; Plamacci Aff., ¶ 8). The Board also held that North River Glass was required to pay 20% liquidated damages and an administrative fee of $200, for a total award of $14,398.54, and ordered it to provide a security deposit of a maximum of $15,000, or a fringe benefit bond in the amount of not less than $50,000. (Harriman Aff., ¶ 13; Palmacci Aff., ¶ 9).

In a letter dated February 7, 2005 sent via certified and regular mail, the Joint Trade Board notified Harvey Graham of North River Glass that it had heard the charges on February 1, 2005, had ruled in the District Council's favor, and had assessed an award against North River Glass in the amount of $14,398.54, payable within ten days following receipt of the award. The Joint Trade Board included a copy of the appeal procedures. (Harriman Aff., ¶ 15; Exh. F). The Joint Trade Board also noted in the award that if North River Glass failed to comply with the terms of the award, and the Union prevailed in a judicial enforcement action, attorney's fees would be deemed part of the award, along with interest on the attorney fees counting from a date ten days after North River Glass' receipt of the award. (Harriman Aff., ¶16; Exh. F). Defendant refused to sign for receipt of the February 7 letter. (Harriman Aff., ¶ 16; Exh. F).

North River Glass did not appeal the Joint Trade Board's decision within ten days of receipt of the award, nor did it move to vacate the award in federal district court within thirty days of receipt of the award. (Harriman Aff., ¶ 17). To date, North River Glass has not made payment of the award. (Harriman Aff., ¶ 17).

North River Class Co., Inc, made payments to the DC35 Funds for employee contributions from 1998 through March 2002. (Palmacci Aff., ¶ 10). Tammy Albanese

was the President of North River Glass Co., Inc. (Palmacci Aff., ¶ 10). On or about March 23, 2002, North River Glass & Aluminum, L.L.C., was incorporated by Jacqueline Graham, wife of Harvey Graham, who served as the Project Manager for North River Glass Co., Inc. (Palmacci Aff., ¶ 11).

On April 18, 2002, North River Glass Co., Inc., made payment to the Funds for contributions for March 2002 in the amount of $2954.79. (Palmacci Aff., ¶ 12). The check was drawn from the account of "North River Glass Co., Inc.", 15 Gristmill Road, Pembroke, MA 02359. (Palmacci Aff., ¶ 12; Exh. 1). The remittance report completed by Defendant and submitted to the Funds listed "North River Glass Co., Inc." as the employer, and the report was completed by Tammy Albanese. The contributions were for employees Vincent Gonveia and Mark Nelson. (Palmacci Aff., ¶ 12; Exh. 2).

On June 14, 2002, the Fund received a check for contributions for May 2004 from an account listed as "North River Glass & Aluminum, L.L.C.," 413 Plymouth Street, Halifax, MA 02338, in the amount of $1931.79. (Palmacci Aff., ¶ 13; Exh. 3). The remittance report still listed North River Glass Co., Inc., as the employer, and was again completed by Tammy Albanese. Contributions were again made for the same two employees, Vincent Gonveia and Mark Nelson. (Palmacci Aff., ¶ 13; Exh. 4).

No payment was made to the Funds for employees working in May 2002 because no work was performed, but a remittance report reporting "No Work" was submitted listing North River Glass Co., Inc., as the employer, and was completed by Tammy Albanese. Once again, Vincent Gouveia and Mark Nelson were the only listed employees. (Palmacci Aff., ¶ 14; Exh. 5).

6

Aluminum, LLC as the employer, and was completed by Jesse Graham. Vincent Gouveia and Mark Nelson were again listed as employees. (Palmacci Aff., ¶ 15; Exh. 7). On September 4, 2002, North River Glass & Aluminum, LLC, made payment to the Funds for contributions for July 2002 in the amount of $4964.03. (Palmacci Aff., ¶ 16; Exh. 8). Vincent Gouveia and Mark Nelson were again listed as employees, along with two other individuals for whom contributions were made. (Palmacci Aff., ¶ 16; Exh. 9).

On March 18, 2004, the Joint Trade Board notified Harvey Graham of North River Glass that the Union had brought charges against North River Glass for violating Article IX, Section 3 of the agreement, by failing to make contributions for January 2004. (Harriman Aff., ¶ 18; Plamacci Aff., ¶ 17; Exh. 10). A Joint Trade Board hearing was thereafter scheduled for April 6, 2004. On the morning of the hearing, Harvey Graham contacted the Funds and stated that in lieu of appearing before the Joint Trade Board, he would make an immediate payment of the past due contributions. (Harriman Aff., ¶19; Palmacci Aff., ¶ 18). A check was thereafter delivered to the Funds in the amount of $2927.87. (Palmacci Aff., ¶ 18; Exh. 11).

North River Glass & Aluminum continued to make contributions and complete remittance reports (although not always in a timely fashion) and send them to the Funds for another two years. (Palmacci Aff., ¶ 19). The last payment made and remittance report filed by North River Glass was on November 1, 2004. Thereafter, North River Glass & Aluminum stopped making contributions. (Palmacci Aff., ¶ 19; Exhs. 12, 13).

The 1998 collective bargaining agreement to which North River Glass Co., Inc., originally was signatory contained the following language that binds its successor to the terms of the collective bargaining agreement:

7

(A.)    This Agreement, and any supplements or amendments thereto, hereinafter referred to collectively as 'Agreement', shall be binding upon the parties hereto, their successors, administrators, executors and assigns.

(B.)    In the event the Employer's business, in whole or in part, is sold, leased, transferred or taken over by sale, transfer, lease, assignment, receivership or bankruptcy proceedings, such business and operation shall continue to be subject to the terms and conditions of this Agreement for the life thereof. It is understood by this provision that the parties hereto shall not use any leasing or other transfer device to a third party to evade this Agreement. The Employer shall give notice of the existence of this Agreement and this provision to any purchaser, transferee, lessee, assignee, etc., of the business and operation covered by this Agreement or any part thereof. Such notice shall be in writing with a copy [to] the UNION, at the time the seller, transferor or lessor executes a contract or transaction as herein described. The UNION shall also be advised of the exact nature of the transaction, not including financial details.

(C.)    In the event the Employer fails to require the purchaser, transferee or lessee to assume the obligations of this Agreement, the Employer (including partners thereof) shall be liable to the UNION, and to the Employees covered, for all damages sustained as a result of such failure to require assumption of the terms of this Agreement, but shall not be liable after the purchaser, transferee or lessee has agreed to assume the obligations of this Agreement. (Harriman Aff., ¶ 21; Exh. G).

III.    Argument

A.    Default Judgment Should be Entered Against North River Glass Because it is Not Represented by Counsel.

Defendant North River Glass Co., Inc., is incorporated under the laws of the Commonwealth of Massachusetts. Its successor, Defendant North River Glass & Aluminum, L.L.C., is likewise a Massachusetts corporation. North River Glass has not retained an attorney to represent the corporate entity. Harvey Graham, Operations Manager for North River Glass & Aluminum, L.L.C., has indicated that he will represent the corporation on a pro se basis, but this is prohibited under federal law.

8

"Corporations . . . are not human beings . . . they are only creatures of the state subject to government regulation and control. One of the time-hallowed restrictions on corporations has been that, in court proceedings, they must be represented by a licensed attorney. There is nothing unfair, illegal or unconstitutional in this requirement." *In re Las Colinas Development Corporation,* 585 F.2d 7, 13 (1st Cir. 1978). "There exists a longstanding rule that a corporation may not proceed pro se in federal court, but must appear by an attorney." *Sharp v. Bivona,* 304 F. Supp.2d 357 (E.D.N.Y. 2004), citing *Rowland v. California Men's Colony Unit II Men's Advisory Council,* 506 U.S. 194, 201-202 (1993). "It has been the law for the better part of two centuries . . . that a corporation may appear in the federal courts only through licensed counsel." *Roscoe v. U.S.,* 134 Fed. Appx. 226, 227 (10th Cir. 2005).

This rule applies "to all forms of business entities." *Gilley v. Shoffner,* 345 F.Supp.2d 563, 566 (M.D.N.C. 2004). "An LLC should be governed . . . by the sale rule" mandating that both partnerships and corporations may only appear in court represented by legal counsel. *Kipp v. Royal and Son Alliance Pers. Ins. Co.,* 209 F.Supp.2d 962, 963 (E.D.Wis. 2002).

Thus, as North River Glass Co., Inc., and its successor, North River Glass & Aluminum, L.L.C., are corporate entities, they must be represented by an attorney in this Court proceeding, and therefore the failure to obtain counsel to represent the corporation compels the Court to enter a default judgment in favor of Plaintiff and against North River Glass Co., Inc., and its successor, North River Glass & Aluminum, L.L.C.

9

B.    Summary Judgment Standard

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. Rule 56(c) provides for the entry of summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Perez De La Cruz v. Crowley Towing and Transportation Co.*, 807 F.2d 1084, 106 (1st Cir. 1986), *cert. denied*, 487 U.S. 1050 (1987).

Material facts are those that have the potential to affect the outcome of the suit under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Nereida-Gonzalez v. Tirado-Delgado*, 990 F.2d 701, 703 (1st Cir. 1993). The existence of a factual dispute will not necessarily defeat a summary judgment motion. "[T]he requirement is that there must be a *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law applicable to a case determines whether a particular factual dispute is material, and the court should assess the evidence to determine the genuineness of the factual dispute. *Id.* No genuine issue for trial exists where the record taken as a whole could not lead a rational trier of facts to find for the nonmoving party. *Matsushita Electric Industry Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).

After the moving party meets its burden, the nonmoving party bears the burden of placing at least one material fact into dispute after the movant offers evidence of the

10

absence of a genuine issue. *Darr v. Muratore*, 8 F.3d 854, 859 (1ˢᵗ Cir. 1993). Even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation. *Medina Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1ˢᵗ Cir. 1990).

C.    Plaintiff is Entitled to Enforcement of the Award Pursuant to Section 301 of the Labor Management Relations Act.

Section 301 of the Labor Management Relations Act vests federal district courts with jurisdiction to enforce collective bargaining agreements. 29 U.S.C. §185; *Textile Workers Union of America v. Lincoln Mills*, 353 U.S. 448 (1957). Section 301 likewise vests courts with jurisdiction to enforce or vacate arbitration awards rendered pursuant to arbitration clauses of collective bargaining agreements. *United Paperworkers Int'l. Union v. Misco, Inc.*, 484 U.S. 364 (1987).

In Section 301 actions, the "judicial review of an arbitration award is among the narrowest known to the law." *Maine Cent. R.R. Co. v. Brotherhood of Maintenance of Way Employees*, 873 F.2d 425, 428 (1ˢᵗ Cir. 1989). Any review is "extremely narrow and extraordinarily deferential." *Service Employees Int'l Union v. Local 1199, N.E.*, 70 F.3d 647, 651 (1ˢᵗ Cir. 1995). Courts "shall uphold an arbitrator's interpretation of a contract so long as we can find *some plausible argument* that favors his interpretation." *Crafts Precision Ind., Inc. v. Lodge No. 1836, Int'l Ass'n of Machinists*, 889 F.2d 1184 (1st Cir. 1989) (Emphasis added). Even in summary judgment cases, this highly deferential standard governs judicial review of arbitration awards. *El Dorado Technical Serv., Inc. v. Union General de Trabajadores de Puerto Rico*, 961 F.2d 317, 319 (1ˢᵗ Cir. 1992) (affirming enforcement of arbitration award on summary judgment).

11

1.    The Joint Trade Board's Award is Enforceable and Governed by the Same Principles as is an Individual Arbitrator's Award.

Article XIX of the collective bargaining agreement provides for a grievance and arbitration process for handling disputes that arise under the agreement. The agreement establishes a Joint Trade Board, comprised of representatives from both the District Council and the Contractors Association, to hear and adjudicate "all questions of interpretation of this agreement and all grievances and complaints." (Harriman Aff. ¶ 5; Exh. A).

The Joint Trade Board's award should be treated in the same manner as an award from an individual arbitrator. Section 301 authorizes federal courts to enforce final and binding decisions and awards by a joint union-employer grievance panel. See: *International Brotherhood of Electrical Workers, Local 910, AFL-CIO v. Roberts*, 992 F.Supp. 132, 134 (N.D.N.Y.1998). "These awards, like arbitration awards, are entitled to considerable deference from the courts." *Id.* at 135. "Courts have found, that as a general proposition, labor-management committee decisions are final and binding arbitration awards." *Team Electric M.V. Inc. v. Local Union No. 701 of the International Brotherhood of Electrical Workers*, 2001 U.S. Dist. LEXIS 17869 (N.D.Ill.) (October 19, 2001). An award is enforceable under Section 301 if it is "the parties' chosen instrument for the definitive settlement of grievances." *General Drivers, Local No. 89 v. Riss & Co.*, 372 U.S. 517, 519 (1963).

Thus, the Joint Trade Board's decision should be analyzed, and ultimately enforced, in the same manner in which the Court would analyze a more traditional award from an individual arbitrator. See: *Local Union 1253, Int'l Brotherhood of Elec. Workers v. S/L Construction, Inc.*, 217 F.Supp.2d 125 (D.Me. 2002) (Award of a joint labor-management committee that found electrical contractor to have violated the collective bargaining

12

agreement where the employer had signed an "Inside Agreement," enforceable as a final and binding award).

Here, Article XIX of the agreement sets up a Joint Trade Board comprised of six contractors and six members of the District Council. Article XIX, Section 11 states that the decisions and findings of the Joint Trade Board are binding on the parties, and that such decisions are final unless appealed in conformity with Article XX of the agreement. Defendant did not attempt to appeal the Joint Trade Board's decision, so the Board's award is final and binding and enforceable under Section 301.

Furthermore, the decision of the Joint Trade Board, like that of an individual arbitrator, shall be enforced "'as long as the arbitrator is even arguably construing the contract and acting within the scope of his authority.'" *Local Union 1253,* 217 F.Supp.2d at 137, quoting *Providence Journal Co. v. Providence Newspaper Guild,* 271 F.3d 16, 20 (1st Cir. 2001). In the instant case, the District Council charged North River Glass with failing to pay fringe benefit contributions due, a clear violation of Article IX, Section 3 of the agreement, as well as with failing to have a security deposit on file, or in obtaining a fringe benefit bond pursuant to Article IX, Section 1. Thus, the Joint Trade Board's February 7, 2005 award draws its essence from the agreement and should be enforced.

    2. <u>North River Glass & Aluminum is the Successor of North River Glass Co., Inc.</u>

North River Glass Co., Inc., became signatory to the collective bargaining agreement between DC35 and the Glass Employers' Association of New England, Inc., when it signed a Memorandum of Understanding for Non-Association Independent Contractors on November 2, 1998.

North River Glass Co., Inc, made contributions to the Fund through April 2002. On or about March 23, 2002, North River Glass & Aluminum, LLC, was formed, and the checks being sent to the Fund for contributions due began to be issued from the account of North River Glass & Aluminum, LLC, even though North River Glass Co., Inc., was still listed as the employer on the remittance reports. Eventually, by September 2002, both the checks and the remittance reports reflected that contributions were being made by North River Glass & Aluminum, LLC.

The business continued seamlessly during the transition from North River Glass Co., Inc., to North River Glass & Aluminum, LLC. North River Glass & Aluminum continued to make contribution payments and complete the remittance reports in the same manner in which North River Glass Co., Inc., had. The same employees were retained, and North River Glass & Aluminum never claimed, over the next two years, that it was not bound to the collective bargaining agreement with DC35.

Further evidence that North River Glass & Aluminum adopted the agreement entered into by North River Glass Co., Inc., is that in March 2004, the Union preferred charges against North River Glass for being delinquent in the payment of past due contributions. The Joint Trade Board notified Harvey Graham of North River Glass & Aluminum that a hearing before the Board would be held on April 6, 2004. On the morning of the hearing, Harvey Graham contacted the Funds and indicated that in lieu of appearing before the Joint Trade Board, North River Glass would make payment of the past due contributions, and a check was sent to the Funds for the delinquent amount shortly thereafter. Such conduct acknowledges that North River Glass & Aluminum, LLC was bound by the terms of the collective bargaining agreement.

14

"A collective bargaining agreement is not dependent on the reduction in writing of the parties' intention to be bound' . . . rather, 'all that is required is conduct manifesting an intention to abide and be bound by the terms of an agreement." *Bricklayers Local 21 v. Banner Restoration, Incorporated,* 385 F.3d 761, 766 (7th Cir 2004), quoting *Gariup v. Birchler Ceiling and Interior Co.,* 777 F.2d 370, 373 (7th Cir 1985).

In *Bricklayers Local 21 v. Banner Restoration, Incorporated,* 385 F.3d 761, 766 (7th Cir. 2004), the employer never signed a collective bargaining agreement with the union but operated in a manner consistent with the obligations laid out in the collective bargaining agreement.    Between June of 1991 and March of 1998, the company submitted monthly fringe benefit contributions and contribution reports to the union's fringe benefit funds as required by the terms of the collective bargaining agreement. *Id* at 764.    The contribution reports listed the employees' names and social security numbers, and the company sent checks to the Funds for the contribution payments. The employer also remitted union dues and cooperated in an audit. *Id.* at 766. Based upon these actions, the Seventh Circuit ruled:

> The District Court was entitled to conclude that [the employer's] seven-year course of conduct manifested an intent to be bound to the terms of the collective bargaining agreement.    Although [the employer] never signed the collective bargaining agreement, the company's regular monthly contributions, payment of union wages, remission of union dues, failure to challenge jurisdictional authority covered by the collective bargaining agreement and other activities consisten. with the conduct of a signatory constitute acceptance by performance.

*Bricklayers Local 21 v. Banner Restoration, Incorporated,* 385 F.3d at 769.

Thus, as in *Banner Restoration*, North River Glass & Aluminum, LLC engaged in

a pattern of conduct for a number of years that clearly manifested an intent to be bound

by the terms of the agreement.

Moreover, Section R-5 of the 1998-2002 collective bargaining agreement to

which North River Glass Co., Inc., is signatory, contains a successorship provision that

binds North River Glass & Aluminum, LLC to the terms of the agreement. That

provision states, in relevant part:

> This Agreement, and any supplements or amendments thereto, hereinafter
> referred to collectively as 'Agreement', shall be binding upon the parties
> hereto, their successors, administrators, executors and assigns. In the event the
> Employer's business, in whole or in part, is sold, leased, transferred or taken
> over by sale, transfer, lease, assignment, receivership or bankruptcy
> proceedings, such business and operation shall continue to be subject to the
> terms and conditions of this Agreement for the life thereof.

Thus, under the clear terms of the collective bargaining agreement, North River

Glass & Aluminum, LLC, is bound to the agreement by virtue of North River Glass Co.,

Inc., being signatory to the Memorandum of Understanding.

3.    Defendants Failed to Vacate the Joint Trade Board's Award Within Thirty
      Days of its Issuance.

Any claim by North River Glass Co., Inc., or its successor, North River Glass &

Aluminum, L.L.C., that it is not bound by the award or to the agreement must be rejected.

Not only did North River Glass never appeal the award, it never moved to vacate the

award within the thirty-day statutory time period. (Harriman Aff. ¶ 21). North River

Glass' failure to move to vacate the award therefore bars it from now asserting defenses

that it could have asserted in a motion to vacate.

The timeliness of a Section 301 suit to vacate an arbitration award is determined

by referring to the appropriate state statute of limitations. *Derwin v. General Dynamics*

*Corporation*, 719 F.2d 484 (1st Cir. 1983). Accord: *International Ass'n of Bridge, Structural & Ornamental Iron Workers, Shopman's Local 501 v. Burtman Iron Works, Inc.*, 928 F.Supp. 83, 85 (D.Mass. 1996). "When Congress fails to furnish an express statute of limitations in connection with enforcement of a federal right, a court's initial look must be to state law to isolate the most closely analogous rule of timeliness." *Posadas Puerto Rico Associates, Inc. v. Asociacion de Empleados de Casino de Puerto Rico*, 873 F.2d 479, 480 (1st Cir. 1989).

The Massachusetts Arbitration Act requires that any action taken to vacate an arbitration award be filed within 30 days of delivery of the award. M.G.L. c. 153, §11. In *Derwin v. General Dynamics Corporation*, 719 F.2d 484, 489 (1st Cir. 1983), the First Circuit, in interpreting the Massachusetts Arbitration Act explained:

> A party who fails to initiate an action to vacate or modify an award within the thirty day time limit specified in Sections 11 and 12 is *barred* from asserting those claims as defenses to a later action to confirm [the arbitration award] . . . *This provision virtually eliminates any prospect of a successful challenge to an Award after the passage of the thirty-day period.* (Emphasis added).

North River Glass failed to take any action to vacate or modify the award within the thirty-day period, so it cannot now claim that it was not bound to the collective bargaining agreement, or that the Board exceeded its power in hearing the matter. Furthermore, it may not assert any other affirmative defenses that it could have raised in a motion to vacate the award. See: *Ironworkers Local Union No. 501 v. Burtman Iron Works*, 928 F.Supp. 83, 86 (D.Mass. 1996).

Furthermore, North River Glass & Aluminum, LLC has no basis for arguing that it is exempt from having to vacate the award within thirty days of its issuance. In *Painters District Council No. 35 v. Coating Systems, Inc.*, 164 LRRM 2240 (D. Mass.

17

1997), the Court specifically rejected such an argument from an employer who claimed that it was exempt from having to comply with the statutory time limit for moving to vacate an award because it was contesting the jurisdiction of the arbitration panel.

Similarly, in *Sullivan v. Gilchrist*, 87 F.3d 867 (7th Cir. 1996), a union brought a complaint against two plumbing contractors, Gilchrist and Traynor. Traynor had been signatory to collective bargaining agreements with the union for twenty years, from 1965 to 1985. *Id.* at 69. Between 1986 and 1991, however, Traynor had continued to make contributions to the union, completing 79 remittance reports during that time. *Id.* When the union later brought charges against Traynor and the Joint Arbitration Board found Gilchrist signatory to the agreement and Traynor liable as Gilchrist's successor, Traynor failed to move to vacate the award within the statutory time period. *Id.* Traynor argued, however, that he was exempt from having to comply with the statute of limitations because he was challenging the arbitration board's jurisdiction over him under the theory that he had never signed the collective bargaining agreement. *Id.* at 870.

While the Court noted that Traynor's claim was undercut by the fact that he had submitted 79 remittance reports over a five-year period and that the collective bargaining agreement contained successor liability language, the Court held that it need not even consider the remittance reports or the successor language because Traynor failed to challenge the arbitration award within the statutory time period and, therefore, was stuck with the Joint Arbitration Board's decision:

> The sole issue was whether Traynor had challenged the arbitration award within the statutory limitations period. Neither the existence and scope of the collective bargaining agreement nor the substance of Traynor's appearance before the [Joint Arbitration Board] were relevant to this inquiry. *Id.*

18

In *Illinois v. District Council No. 1 of the Int'l Union of Bricklayers and Allied Craftworkers v. Gianakas,* 2005 U.S. Dist. LEXIS 14642 (E.D.Ill. 2005) (July 15, 2005) a Joint Arbitration Board entered an award in favor of the union and against the company The company then refused to comply with the award, and the union enforced it in federal court and obtained a default judgment against the company. *Id.* at [*2]. The union then brought charges against Gianakas, individually, alleging that his relationship with the company made him personally liable for the award issued against the company. *Id.* at [*3].

Prior to the arbitration hearing, Gianakas argued that he was not party to the collective bargaining agreement nor subject to the Joint Arbitration Board, and would not attend the hearing. *Id.* Indeed, no one attended the hearing on Gianakas' behalf. The Joint Arbitration Board then found Gianakas personally liable for $48,000 in damages, and the Union moved to enforce the award. *Id.* at [*5]. The Court held that by failing to move to vacate the award within the statutory time limit, Gianakas was bound by the award, and his arguments that he was not bound to the agreement and that the Joint Arbitration Board had no jurisdiction over him, were irrelevant:

> Gianakas had every right to challenge the arbitration award. He could have, for example, appeared before the arbitration board to defend himself, while preserving his jurisdictional argument. Short of that, he could have taken action to vacate the award. Had he done so within the applicable limitations period, this court might well have agreed with his argument that he was not personally bound by the collective bargaining agreement. Unfortunately the route he chose was the one that he could not safely take: to do nothing. That this inaction is fatal to his argument here should come as no surprise. *Id.* at [*11].

Here, North River Glass & Aluminum could have contested whether it was bound to the agreement at the February 1, 2005 Joint Arbitration Board hearing. It could have appealed the award. It could have moved to vacate the award. It did none of these

things. Thus, North River Glass & Aluminum cannot now assert any jurisdictional defenses at this time, and, therefore, it is bound to the terms of the arbitration award.

### 5. North River Glass Was Properly Notified of the Hearing Date and of the Joint Trade Board's Decision.

North River Glass cannot claim that it did not receive proper notice of the Joint Trade Board hearing, or of the Joint Trade Board's decision. The evidence establishes that the Joint Trade Board sent notice of both the hearing and the decision via certified mail and United Parcel Service to Harvey Graham of North River Glass, but that he refused to accept those letters. Following the hearing, the Joint Trade Board notified Harvey Graham of North River Glass in a letter dated February 7, 2005, of its decision. and included a copy of the Board's appeal procedure. Again, North River Glass refused to accept receipt of the February 7, 2005 letter.

As it is clear that the Joint Board properly notified North River Glass of the hearing date and of the Board's decision, and that the company did not move to vacate the award within the thirty-day statutory period, North River Glass Co., Inc., and its successor, North River Glass & Aluminum, L.L.C., are bound by the Joint Trade Board's decision.

### IV.   Conclusion

For all of the foregoing reasons, and on the record as a whole, Plaintiff requests that the Court grant its motion for default judgment or, in the alternative, its motion for summary judgment in its entirety.

20

Respectfully submitted
For the Plaintiff

By its attorney,

Jonathan M. Conti
BBO #657163.
Feinberg, Campbell & Zack, P.C.
177 Milk Street
Boston, MA 02109
(617) 338-1976

Dated: October ___5___, 2005