UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| PAINTERS AND ALLIED TRADES DISTRICT COUNCIL NO. 35<br>Plaintiff,<br><br>v.<br><br>NORTH RIVER GLASS, CO., INC.,<br><br>and its successor,<br><br>NORTH RIVER GLASS & ALUMINUM, L.L.C.,<br>Defendants. | C.A. No.: 05-10547-PBS |

STATEMENT OF UNDISPUTED MATERIAL FACTS
IN SUPPORT OF PLAINTIFF'S
<u>MOTION FOR SUMMARY JUDGMENT</u>

1.  Painters and Allied Trades District Council No. 35 (hereinafter "District Council") filed a Complaint in this matter on March 23, 2005 against Defendant North River Glass. Defendant answered the Complaint on April 20, 2005, and a Scheduling Conference was held on September 21, 2005. (Affidavit of Jonathan M. Conti, ¶¶ 2, 3).

2.  At the Scheduling Conference, Defendant was ordered to retain counsel to represent the corporation. Upon information and belief, as of October 4, 2005, Defendant has not retained an attorney. (Conti Aff., ¶ 4).

3.  Plaintiff is the authorized collective bargaining representative for painters and allied trades employed in Massachusetts, Vermont, Maine, and New Hampshire. (Affidavit of Ralph Harriman ¶ 3).

4. The District Council and the Painters & Finishing Employers Association of New England, Inc. ("Contractors Association"), and the Glass Employers Association of New England, Inc., are parties to a collective bargaining agreement (hereinafter "the agreement") with effective dates of July 1, 2002 to June 30, 2006. (Harriman Aff. ¶ 4; Exh. A).

5. Defendant North River Glass Co., Inc., was bound to the agreement by virtue of its having signed a Memorandum of Understanding for Non-Association Independent Contractors on November 2, 1998. (Harriman Aff. ¶ 5; Exh. B).

6. Article XIX of the collective bargaining agreement provides for a grievance and arbitration provision for handling disputes that arise under the agreement. (Harriman Aff. ¶ 6, Exh. A). Pursuant to Article XIX, Section 1, the Joint Trade Board is made up of representatives from both the District Council and the Contractors Association, and is authorized, pursuant to Article XIX, Section 5 of the agreement, to hear and adjudicate "all questions of interpretation of this agreement and all grievances and complaints against members of either party to this Agreement, or independent signatory Employer for alleged violations of the same." (Harriman Aff. ¶ 6; Exh. A).

7. Article XIX, Section 11 of the agreement mandates that the Joint Trade Board's decisions are binding on the parties, including any independent signatory, unless appealed in accordance with Article XX of the agreement (Harriman Aff. ¶¶ 6, 7; Exh. A).

8. On October 14, 2004, the Joint Trade Board informed North River Glass that due to its delinquency history, it would now be considered a "probationary

contractor" and would need to post either a security deposit or a performance bond pursuant to Article IX, Section 1. When North River Glass failed to comply with Article IX, Section 1, Painters and Allied Trades District Council No. 35 Trust Funds Administrative Committee brought charges against Defendant on January 10, 2005.

9. Article IX, Section 1 of the agreement is titled "Probationary Contractor/Employer Obligations," and provides as follows:

> Any new employer or any Employer without a history of contributing to the Funds for six (6) months or any Employer whose principal place of business is located outside the territorial jurisdiction of DC35 or any Employer who becomes delinquent in its contributions to the Funds will be considered a Probationary Employer for a period of twenty-four months. Any and all of the following terms and conditions will be required of Probationary Employers:
>
> (A.)   A Security Deposit consisting of either a certified check in an amount approved by the Trustees to a maximum amount of $10,000 or a performance bond by an A-rated carrier as approved by the Commonwealth of Massachusetts in an amount not less than $25,000. The bond must state that the obligee has ninety (90) days to notify the surety company of a delinquency. The security deposit shall be utilized to pay any delinquencies, interest, auditor's fees, audit refusal penalties and/or any other assessed penalties due to the Funds, to pay any wages due employees or to satisfy any claims under Section 3. Any balance remaining shall be used to satisfy Joint Trade Board awards.
> (B.)   Weekly submittal of contributions and hours.
> (C.)   The appointment of a job Steward, shall be at the discretion of the UNION on all jobs. Contractors will receive notice within twenty-four (24) hours of said appointment. (Harriman Aff., ¶ 8; Exh. A).

10. On October 14, 2004, the Joint Trade Board informed North River Glass that due to its delinquency history, it would now be considered a "probationary contractor" and would need to post either a security deposit or a performance

bond pursuant to Article IX, Section 1. When North River Glass failed to comply with Article IX, Section 1, Painters and Allied Trades District Council No. 35 Trust Funds Administrative Committee brought charges against Defendant on January 10, 2005. Article IX, Section 1 of the agreement is titled "Probationary Contractor/Employer Obligations". (Harriman Aff., ¶ 9).

11. On January 14, 2005, the Joint Trade Board notified North River Glass via certified mail that Painters and Allied Trades District Council No. 35 Trust Funds Administrative Committee had also brought charges against North River Glass for the alleged violation of Article IX, Section 3, which states, in relevant part:

FAILURE TO PAY

Contributions shall be considered delinquent if not received by the 26th day of the month following the month the work was performed or for weekly submittals, the Wednesday of the week following the week in which the work is performed. Interest charged at the rate of 1 1/2 % per month or prorated for weekly submittals will be assessed for any delinquent contributions which are not paid in violation of this Agreement.
    In the event an Employer is delinquent or fails to abide by Article IX, Sections 1,2 and/or 8 said case will be reviewed by the Funds' Trustees and the following delinquency procedure will be enforced

> (A) A recommendation by the Trustees to the UNION for removal of its members from said Employer's jobs. If the Employees are withdrawn from the job, the delinquent contractor shall pay full wages and contributions for five (5) working days per member. Payment of fund contributions and the payment of wages for a member(s) pursuant to this Section may be withdrawn from the security deposit. Payment of wages and benefits lost by a steward appointed by the UNION will also be deducted from the security deposit. Deductions from the security deposit must be replaced by an Employer prior to continuation of work. The UNION shall have the power to withhold its members upon the recommendation of the Trustees and shall not be liable for withholding its members upon the recommendation of the Trustees.
> (B) A referral of the delinquent Employer by the Trustees to the Joint Trade Board for determination or action.

- (C) An invocation of the arbitration procedure or referral of the delinquent Employer by the Trustees or Joint Trade Board to legal Counsel to bring action on behalf of the Plan pursuant to Section 502(g)(2) and 515 of ERISA to enforce the Employer's obligation.
- (D) In any action in which a decision or judgment is awarded in favor of the Funds, the Employer shall pay to the Funds, in accordance with the court's award or other decision:
  - (i) The unpaid contributions, plus interest on the unpaid contributions, determined at the rate of 1 1/2 % each month plus.
  - (iii) Liquidated damages equal to the greater of –
    - (a) The amount of interest charged on the unpaid contributions, or
    - (b) 20 percent (higher percentage, if permitted by Federal or State Law) of the unpaid contributions, plus
  - (iv) Reasonable attorney's fees and costs of the action, and
  - (v) Such other legal or equitable relief as the court deems appropriate.

(Harriman Aff. ¶ 10; Exh. A).

12. The Joint Trade Board informed North River Glass in its January 10 and January 14, 2005 letters that it was being summoned to have a representative appear on its behalf before the New England Painting, Finishing & Glazing D.C. No. 35 Joint Trade Board at 11:10 a.m. on Tuesday, February 1, 2005, at the offices of Painters and Allied Trades District Council No. 35, 25 Colgate Road, Roslindale, Massachusetts, to resolve the two matters. (Harriman Aff. ¶ 11; Exhs. C and D). Defendant refused to sign for the letters (Harriman Aff. ¶ 11; Exhs. C and D).

13. On February 1, 2005, a hearing was held before the Joint Trade Board. Despite proper notice, no one appeared on behalf of the Company. (Harriman Aff. ¶ 12) Heather Palmacci of the Painters and Allied Trades District Council No. 35 Trust Funds presented evidence in support of the charge, explaining that Defendant had failed to pay the required fringe benefit contributions for October, November, and December 2004, and that Defendant was in arrears for a total of $11,832.12. (Harriman Aff. ¶ 12).

14. Based upon the evidence presented, the Joint Trade Board held that Defendant had breached Article IX, Sections 1 and 3 of the agreement by failing to make the required contributions for October, November, and December 2004 in the amount of $11,832.12, and had failed to provide a security deposit or obtain a fringe benefit bond, in violation of Article IX, Section 1. (Harriman ¶ 13).

15. The Board also held that North River Glass was required to pay 20% liquidated damages and an administrative fee of $200, for a total award of $14,398.54, and ordered it to provide a security deposit of a maximum of $15,000, or a fringe benefit bond in the amount of not less than $50,000. (Harriman Aff. ¶ 14).

16. In a letter dated February 7, 2005 sent via certified mail, the Joint Trade Board notified Harvey Graham of North River Glass that it had heard the charges on February 1, 2005, had ruled in the District Council's favor, and had assessed an award against North River Glass in the amount of $14,398.54, payable within ten days following receipt of the award. The Joint Trade Board included a copy of the appeal procedures. (Harriman Aff. ¶ 15; Exh. E).

17. The Joint Trade Board also noted in the award that if North River Glass failed to comply with the terms of the award, and the Union prevailed in a judicial enforcement action, attorney's fees would be deemed part of the award, along with interest on the attorney fees counting from a date ten days after North River Glass' receipt of the award. (Harriman Aff. ¶16; Exh. E). Defendant refused to sign for receipt of the February 7 letter. (Harriman Aff. ¶ 16; Exh. E).

18. North River Glass did not appeal the Joint Trade Board's decision within ten days of receipt of the award, nor did it move to vacate the award in federal district

court within thirty days of receipt of the award. (Harriman Aff. ¶ 17). To date, North River Glass has not made payment of the award. (Harriman Aff. ¶ 17).

19. North River Class Co., Inc, made payments to the Painters and Allied Trades District Council No. 35 Trust Funds for employee contributions from 1998 through March 2002. Tammy Albanese was the President of North River Glass Co., Inc. (Affidavit of Heather Palmacci, ¶ 10).

20. On or about March 23, 2002, North River Glass & Aluminum, L.L.C., was incorporated by Jacqueline Graham, wife of Harvey Graham, who served as the Project Manager for North River Glass Co., Inc. 20. (Palmacci Aff., ¶ 11).

21. On April 18, 2002, North River Glass Co., Inc., made payment to the Funds for contributions for March 2002 in the amount of $2954.79. The check was drawn from the account of "North River Glass Co., Inc.", 15 Gristmill Road, Pembroke, MA 02359. The remittance report completed by Defendant and submitted to the Funds listed "North River Glass Co., Inc.", as the employer, and the report was completed by Tammy Albanese. The contributions were for employees Vincent Gouveia and Mark Nelson. (Palmacci Aff., ¶ 12; Exhs. 1 and 2).

22. On June 14, 2002, the Fund received a check for contributions for May 2004 from an account listed as "North River Glass & Aluminum, L.L.C.," 413 Plymouth Street, Halifax, MA 02338, in the amount of $1931.79. The remittance report still listed North River Glass Co., Inc., as the employer, and was again completed by Tammy Albanese. Contributions were again made for the same two employees, Vincent Gonveia and Mark Nelson. (Palmacci Aff., ¶ 13; Exhs. 3 and 4).

23. No payment was made to the Funds for employees working in May 2002 because no work was performed, but a remittance report was submitted listing North River Glass Co., Inc., as the employer, and was completed by Tammy Albanese. Vincent Gouveia and Mark Nelson were the only listed employees on the remittance report. (Palmacci Aff., ¶ 14; Exh. 5).

24. On July 9, 2002, payment for contributions for June 2002 was made to the Funds via a check from North River Glass & Aluminum, LLC in the amount of $3117.23. The remittance report also listed North River Glass & Aluminum, LLC as the employer, and was completed by Jesse Graham. Vincent Gouveia and Mark Nelson were again listed as employees. (Palmacci Aff., ¶ 15; Exhs. 6 and 7).

25. On September 4, 2002, North River Glass & Aluminum, LLC, made payment to the Funds for contributions for July 2002 in the amount of $4964.03. Vincent Gouveia and Mark Nelson were again listed as employees, along with two other individuals for whom contributions were made. (Palmacci Aff., ¶ 16; Exhs. 8 and 9).

26. On March 18, 2004, the Joint Trade Board notified Harvey Graham of North River Glass that the Union had brought charges against North River Glass for violating Article IX, Section 3 of the agreement, by failing to make contributions for January 2004. A Joint Trade Board hearing was thereafter scheduled for April 6, 2004. (Harriman Aff., ¶ 18; Exh. F; Palmacci Aff., ¶ 17; Exh. 10).

27. On the morning of the hearing, Harvey Graham contacted the Funds and stated that in lieu of appearing before the Joint Trade Board, he would make an immediate payment of the past due contributions. A check was thereafter delivered to the

Funds in the amount of $2927.87. (Harriman Aff., ¶ 19; Exh. F; Palmacci Aff., ¶ 18; Exh. 11).

28. North River Glass & Aluminum continued to make contributions and completed and filed remittance reports (although not always in a timely fashion) with the Funds for another two years. The last payment made and remittance report filed was on November 1, 2004. Thereafter, North River Glass & Aluminum stopped making contributions. (Harriman Aff., ¶ 20; Palmacci Aff., ¶ 19; Exhs. 12 and 13).

29. The 1998-2002 collective bargaining agreement to which North River Glass Co., Inc., originally was signatory contained the following language that binds its successor to the terms of the collective bargaining agreement:

> (A.) This Agreement, and any supplements or amendments thereto, hereinafter referred to collectively as 'Agreement', shall be binding upon the parties hereto, their successors, administrators, executors and assigns.
> (B.) In the event the Employer's business, in whole or in part, is sold, leased, transferred or taken over by sale, transfer, lease, assignment, receivership or bankruptcy proceedings, such business and operation shall continue to be subject to the terms and conditions of this Agreement for the life thereof. It is understood by this provision that the parties hereto shall not use any leasing or other transfer device to a third party to evade this Agreement. The Employer shall give notice of the existence of this Agreement and this provision to any purchaser, transferee, lessee, assignee, etc., of the business and operation covered by this Agreement or any part thereof. Such notice shall be in writing with a copy [to] the UNION, at the time the seller, transferor or lessor executes a contract or transaction as herein described. The UNION shall also be advised of the exact nature of the transaction, not including financial details.
> (C.) In the event the Employer fails to require the purchaser, transferee or lessee to assume the obligations of this Agreement, the Employer (including partners thereof) shall be liable to the UNION, and to the Employees covered, for all damages sustained as a result of such failure to require assumption of the terms of this Agreement, but shall not be liable after the purchaser, transferee or lessee has agreed to assume the obligations of this Agreement. (Harriman Aff., ¶ 21; Exh. F).

Dated this 5th day of October, 2005.

                                              Respectfully submitted

                                              For the Plaintiff
                                              By its Attorney

                                              _____
                                              Jonathan M. Conti
                                              BBO # 657163
                                              Feinberg, Campbell & Zack, P.C.
                                              177 Milk Street
                                              Boston, MA 02109
                                              (617) 338-1976